UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 08-11657-RWZ

RICARDO GONZALEZ

v.

THOMAS DICKHAUT

MEMORANDUM OF DECISION

November 30, 2010

ZOBEL, D.J.

Ricardo Gonzalez, an inmate at the Souza-Baranowski Correctional Center, asserts that his state conviction for possession of ammunition without a firearm identification card was constitutionally invalid and petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

I.  **Background**

In April 2003 Gonzalez arranged to purchase marijuana from a drug dealer named James Jackson.[1] Jackson drove to Gonzalez' apartment where he was greeted out front by Gonzalez and then invited inside. Jackson entered and saw a third individual with a shotgun or rifle (the "Gunman"). The Gunman ordered Jackson to "give up everything." When Jackson instead turned to leave the Gunman fired and

---

[1] These are the facts as set forth by the Massachusetts Appeals Court. Commonwealth v. Gonzalez, 860 N.E.2d 37, 39 (Mass. App. Ct. 2007) (Docket # 11 Ex. G).

severely injured Jackson. Jackson heard Gonzalez tell the Gunman to "shoot him again" but no additional shots were fired.

### A. Procedural history

Gonzalez was indicted on five counts: (1) armed assault with intent to murder, Mass. Gen. Laws ch. 265, § 18(b); (2) assault and battery with a dangerous weapon, causing serious injury, id. at § 15A; (3) armed robbery, id. at § 17; (4) unlawful possession of a firearm, Mass. Gen. Laws ch. 269, § 10(a); and (5) unlawful possession of ammunition without a firearm identification card, id. at § 10(h). The record does not indicate whether the Gunman was ever arrested or indicted, but he played no part in the Gonzalez prosecution.

All charges were tried to a jury in the Massachusetts Superior Court and Gonzalez was convicted of assault and battery with a dangerous weapon (Count 2), unlawful possession of a firearm (Count 4), and unlawful possession of ammunition (Count 5), and acquitted of armed assault (Count 1) and armed robbery (Count 3).[2] The court sentenced him to not more than fifteen nor less than fourteen and one-half years on the assault and battery, Count 2, and not more than twenty nor less than eighteen years on the firearm and ammunition possession, Counts 4 and 5, all to run concurrently.[3]

---

[2]The superior court docket sheet contains numerous inconsistencies as to the disposition of the charges and the sentences imposed.

[3]The lengthy firearm and ammunition sentences reflect statutory enhancements for prior convictions. Mass. Gen. Laws ch. 269, § 10G.

The appeals court affirmed the assault and ammunition possession convictions but reversed the firearm conviction and dismissed that portion of the indictment. The Supreme Judicial Court ("SJC") declined Gonzalez' application for further appellate review. His petition for a writ of certiorari before the United States Supreme Court was also denied.

Petitioner timely filed this petition for a writ of habeas corpus seeking relief from his conviction on Count 5 for unlawful possession of ammunition without a firearm identification card under Mass. Gen. Laws ch. 269, § 10(h). The petition is premised on a single argument: Gonzalez was denied due process of law because the Commonwealth introduced no evidence to establish an element of the offense and, instead, imposed on him the burden of rebutting a presumption.

### B. The Use of the Presumption at Trial

The Gunman, not Gonzalez, possessed the ammunition and shot Jackson. Gonzalez was nevertheless liable for the shooting as a joint venturer if (1) he was present at the scene of the crime; (2) he knew that the Gunman intended to commit the crime and he shared the intent; and (3) he assisted or was by agreement willing to assist in the commission of the crime.[4] (Trial Tr. 31, Docket # 11 ex. B.) In the specific context of the possession charges, the court instructed the jury that joint venture liability required proof that Gonzalez knew the Gunman possessed the weapon and

---

[4]Petitioner argued on direct appeal that liability for unlawful firearm and ammunition possession could not be premised on a joint venture theory. He does not raise that argument here.

3

ammunition and could or would use the weapon in the commission of the robbery. (Trial Tr. 36-37.)

Massachusetts law requires the possessor of ammunition to rebut a presumption that possession is without a firearm identification card. See Mass. Gen. Laws ch. 278, § 7. The trial court applied the presumption against the joint venturer Gonzalez and required him to produce the Gunman's firearm identification card. When Gonzalez did not produce any evidence that the Gunman held a firearm identification card the court found no identification card as a matter of law and instructed the jury not to consider that element of the charged offense. (Trial Tr. 58.)

The appeals court approved this use of the presumption. It first reasoned that Gonzalez was in a better position than the Commonwealth to know whether the Gunman had a license and, if ignorant in that regard, assumed the risk. Commonwealth v. Gonzalez, 860 N.E.2d 37, 41 (Mass. App. Ct. 2007) (Docket # 11 Ex. G). The court viewed the critical question as whether Gonzalez knew the Gunman was armed, a question resolved, in the affirmative, when the jury convicted on the basis of a joint venture. Id.

## II. Analysis

Petitioner's application for a writ of habeas corpus will not be granted unless the state courts' adjudication of his constitutional claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254. A state court decision is contrary to clearly established Supreme Court precedent if it applies a

4

rule that contradicts the law set forth by the Court or confronts a set of facts materially indistinguishable from a decision of the Court but reaches a different result, and it is an unreasonable application if the precedent is applied to the facts in an objectively unreasonable manner. Brown v. Payton, 544 U.S. 133, 141 (2005). If, however, the state courts failed to address petitioner's constitutional claim, his claim is considered de novo. Evans v. Thompson, 518 F.3d 1, 6 (1st Cir. 2008).

The parties vigorously dispute whether the appeals court opinion reached Gonzalez' constitutional claim and is entitled to deferential review. Cases that fall in the gap between the standards of review, between decisions found to be erroneous and those that are unreasonable, encompass only close questions "where the issue is painted in shades of grey, rather than contrasting colors of right or wrong." Id. at 7 (internal quotation marks omitted). This case does not present such a close question and, therefore, the court need not decide which standard applies.

### A. The Elements of the Crime

Petitioner's argument that his due process rights were infringed by the use of a presumption to establish an element of the offense raises the predicate issue of whether the lack of an identification card is actually an element of the ammunition possession offense. Mass. Gen. Laws ch. 269, § 10(h), mandates that "[w]hoever owns, possesses or transfers . . . ammunition . . . comply[] with the provisions of section 129C of chapter 140." Chapter 140, section 129C requires anyone who possesses any ammunition to have a firearm identification card, subject to certain exemptions. A trial for violation of section 10(h) is governed by a criminal procedure statute of general

5

application which specifies that "[a] defendant in a criminal prosecution, relying for his justification upon a license . . . shall prove the same; and, until so proved, the presumption shall be that he is not so authorized."  Mass. Gen. Laws ch. 278, § 7.

In Commonwealth v. Jones, 361 N.E.2d 1308 (Mass. 1977), the SJC analyzed the application of these procedural requirements to a trial for the violation of the firearm licensing requirement of chapter 169, section 10(a), a licensing statute with nearly identical language to the ammunition possession statute at issue here.  The defendant in Jones was convicted with evidence of knowing possession but the Commonwealth introduced no evidence of a lack of firearm license.  The SJC affirmed.

The Jones opinion first refers to "a presumption that the defendant, until he proves a license, is not so authorized," id. at 1309, then describes the "holding of a valid license" as an "affirmative defense" that is "not an element of the crime as that phrase is commonly used," id. at 1311 (internal quotation marks omitted), and concludes with a discussion of the constitutionality of "presumptions" and "casting the production burden on the defendant," id. at 1311-12.  This conflicting language left ambiguity as to whether the licensing requirement was an element of the crime or an affirmative defense.

The SJC was pressed to resolve this uncertainty in Commonwealth v. Couture, 552 N.E.2d 538 (Mass. 1990), a case which turned on the construction of the section 10(a) firearm licensing statute.  The defendant, Paul Couture, was stopped and his car searched after police received information that he was carrying a handgun.  The police discovered the handgun and the defendant disclosed that he did not posses a firearm

6

license.  Charges were filed and the defendant successfully moved in the trial court to suppress the firearm on the ground that police had no probable cause for the search.

The Commonwealth argued before the SJC that this probable cause ruling was in tension with Jones, because proof of possession of a firearm was sufficient in Jones to obtain a conviction but evidence of possession was insufficient to establish probable cause for a search.  The SJC dismissed this argument, explaining that Jones dealt only with "the allocation of burdens."  Id. at 540.  The defendant had to produce evidence of a license, absent which "the jury are entitled to presume that the defendant indeed did not have a license" and "the Commonwealth need present no additional evidence to prove that point."  Id. at 541.  However, "[t]he mere possession of a handgun was not sufficient to give rise to a reasonable suspicion that the defendant was illegally carrying that gun."  Id. at 542.

It is evident, in light of Couture, that "[c]arrying a gun is not a crime.  Carrying a firearm without a license (or other authorization) is."  Commonwealth v. Alvarado, 667 N.E.2d 856, 859 (Mass. 1996); see Commonwealth v. Nowells, 458 N.E.2d 1186, 1190 (Mass. 1983) (stating "the ownership or possession of a handgun (or a rifle) is not a crime").  Accordingly, the closely related ammunition offense at issue here has three elements: (1) possession (2) of ammunition (3) without a firearm identification card.  Possession of an identification card is not an affirmative defense. The Commonwealth retains the burden of production and proof as to at least the first two elements while defendant bears the burden of production and perhaps proof as to the firearm

7

identification card.[5]  See Commonwealth v. Cabral, 819 N.E.2d 951, 959 n.18 (Mass. 2005) (stating, in dicta, that the defendant bears the burden of proving lawful possession).  If defendant produces no evidence as to the identification card element, a mandatory presumption operates in favor of the state and there is no triable issue.

---

[5]Because this case turns on the constitutionality of the "without a firearm identification card" presumption, the court need not resolve this state law uncertainty as to the allocation of the burden of proof.

**B.    Due Process**

The SJC holding in Couture as to the elements of the offense is critical because due process requires that the Commonwealth prove every fact necessary to constitute the crime charged, In re Winship, 397 U.S. 358, 364 (1970), but not disprove the exculpatory or mitigating facts of an affirmative defense, Patterson v. New York, 432 U.S. 197, 205-207 (1977) (upholding a conviction where the state proved all elements of murder, but defendant bore the burden of proving an emotional disturbance affirmative defense that "does not serve to negative any facts of the crime" but is "a separate issue").  A state may, consistent with due process, establish necessary facts through the use of an evidentiary presumption or a shift in the burden of production, see generally United States v. Black, 512 F.2d 864, 868-69 (1975) (explaining the purely semantic distinction between a presumption and shifting the burden of production), but the evidence must always be sufficient to constitute a prima face case. See Turner v. United States, 396 U.S. 398, 407 n.8 (1970).

**1.    The Constitutionality of Presumptions**

The Supreme Court defined the limits of the use of presumption and burden shifting in Morrison v. California, 291 U.S. 82 (1934), and Tot v. United States, 319 U.S. 463 (1943).

In Morrison, it held that a defendant could bear the burden of production in two circumstances:

> the limits are . . . that [1] the state shall have proved enough to make it just for the defendant to be required to repel what has been proved with excuse or explanation, or [2] at least that upon a balancing of

9

> convenience or of the opportunities for knowledge the shifting of the
> burden will be found to be an aid to the accuser without subjecting the
> accused to hardship or oppression.

Morrison, 291 U.S. at 88-89.  The Court provided, as an example, the production of a license for an activity that would otherwise be illegal.  Id. at 91 n.4.

The Court in Tot narrowed the burden shifting exception to circumstances where the facts proved by the state have a rational connection to the fact presumed.  Tot, 319 U.S. at 467-68.  A presumption is "irrational" if it cannot "at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend."  Leary v. United States, 395 U.S. 6, 36 (1969).  Relative convenience is not an alternate test but only a "corollary" to the requirement of a rational connection, Tot, 319 U.S. at 467, in that the defendant must have more convenient access to the proof and the presumption must not subject the defendant to unfairness or hardship, id. at 469-70.

### 2. The Gonzalez Presumption

Petitioner argues that the state courts unreasonably applied Supreme Court precedent because the use of the licensing card presumption in this joint venture liability circumstance is both contrary to the holding and materially indistinguishable from the facts of Morrison.  The presumption was essential to the Gonzalez conviction because the jury was expressly directed to make no finding as to the "without a firearm identification card" element of the offense.  (Trial Tr. 58.)  If Gonzalez' due process argument has merit, his conviction on Count 5 cannot stand.

Morrison involved defendants Morrison and Doi, charged with violating the

California Alien Land Law by conspiring to place an alien ineligible for citizenship in possession of agricultural land.  The indictment alleged that Doi was a Japanese alien.  Japanese were not, in 1934, eligible for naturalization.  The state proved at trial that Morrison had transferred agricultural land rights to Doi but introduced no evidence as to Doi's citizenship.  The California statute created a presumption that a defendant was not a citizen.  Defendants were found guilty of conspiracy.

Defendants argued that it was a denial of due process to burden Morrison with the presumption that Doi was not a citizen.  The Court agreed.  The Court explained that "[n]o such probability of wrongdoing grows out of the naked fact of use or occupation [of agricultural land] as to awaken a belief that the user or occupier is guilty [of being a ineligible alien]."  Morrison, 291 U.S. at 90; see id. at 92 ("occupation of land is not even a suspicious circumstance").  The Court reasoned that any imputation of knowledge regarding Doi's citizenship was therefore "wholly arbitrary."  Id. at 92.  Morrison was also in no better position than the state to know whether Doi was a citizen as neither Doi's race nor citizenship was apparent without deliberate inquiry.  Id. at 92-93.  "The statute does not make it a crime to put a lessee into possession without knowledge or inquiry as to race and place of birth."  Id. at 93.

### 3. Materially Indistinguishable from Morrison

This court can discern no material distinction between the facts in Morrison and the facts here. The SJC has expressly and repeatedly held that possession of a firearm, and implicitly ammunition, does not create probable cause or even a reasonable suspicion of criminality, see, e.g., Commonwealth v. Haskell, 784 N.E.2d

11

625, 628 (Mass. 2003); Couture, 552 N.E.2d at 541, just as the occupation of land in Morrison was "not even a suspicious circumstance." Gonzalez, like Morrison, is in no better position than the state to know whether the Gunman had a firearm identification card. The Gunman's licensing status is not apparent without further inquiry and Gonzalez is not charged with failure to inquire. The rationale in Couture that the defendant could simply "produce that slip of paper indicating that he was licensed to carry that gun," 552 N.E.2d at 541, is inapplicable here; the identification card at issue does not belong to Gonzalez and the public record of the card would be in the possession of the Commonwealth. See Morrison, 291 U.S. at 292 ("What was known to [Morrison], so far as the evidence discloses, was known also to the people, and provable with equal case.").

The Commonwealth attempts to distinguish Morrison in multiple ways, only two of which merit a response. First, the Commonwealth argues that the ammunition licensing requirement, unlike the land use restriction in Morrison, is a "general prohibition." Morrison identified general prohibitions with specific exceptions as a category of criminal laws where there was likely to be a manifest disparity in convenience of knowledge as to whether the exclusion applied.[6] The Alien Land Law differed because there was no such manifest disparity. Rather, any imputation of knowledge as to Doi's race or citizenship was wholly arbitrary, at least in respect to the conspirator Morrison. Morrison, 291 U.S. at 91-92. The joint venturer Gonzalez'

---

[6]The Commonwealth's distinction concerns the convenience rationale and therefore matters only if the presumption is rational, fair, and does not subject Gonzalez to hardship.

12

opportunity for knowledge as to the Gunman's licensing status is materially indistinguishable from that of Morrison in respect to Doi's citizenship, regardless of the label applied to the ammunition licensing requirement.

Second, the Commonwealth argues that the joint venture theory of liability is materially different from the conspiracy theory in Morrison. A review of the jury instructions shows that there is nothing to this argument. The jury was instructed that joint venture liability depended on Gonzalez knowing and intending that the Gunman would bring the firearm (Trial Tr. 36-37), not that Gonzalez knew of the Gunman's license or lack thereof. This is no different than the situation in Morrison, where the guilty finding rested on Morrison knowingly transferring land rights to Doi, but the Supreme Court concluded that the evidence of the transfer did not support a presumption that Morrison knew Doi was not a citizen.

### 4. Contrary to Law

Burdening Gonzalez with the presumption that the Gunman lacked a license is also contrary to federal law as established in Morrison and Tot.[7] The licensing presumption fails the first Tot requirement. The SJC holding that gun possession does

---

[7]The Commonwealth argues, briefly, that it would be "impractical" to require the prosecution to prove the "without a firearm identification card" element of the offense because, in a joint venture case, the prosecution might not know who the actual possessor was. (Resp't Mem. of Law 16-17, Docket # 16.) This argument is also contrary to the fundamental principles of due process. As the Supreme Court explained in Tot, " the fact that the defendant has the better means of information, standing alone, [cannot] justify the creation of such a presumption. In every criminal case the defendant has at least an equal familiarity with the facts and in most a greater familiarity with them than the prosecution." 319 U.S. at 469. The state could, by this reasoning, "command that the finding of an indictment . . . should create a presumption . . . of all the facts essential to guilt. This is not permissible." Id.

13

not create a reasonable suspicion of a lack of a license forecloses any possibility that a presumption to that effect satisfies the "more likely than not" standard. Nor can the presumption satisfy Tot's corollary requirement of relative convenience. Any record of a licensing card would be in the possession of the Commonwealth or the Gunman, not Gonzalez, and as already discussed any imputation of knowledge to Gonzalez is arbitrary.

In addition, the licensing presumption is unfair and would subject Gonzalez to hardship. There are twenty statutory exemptions from the firearm identification card requirement including numerous exemptions for non-residents and new residents. Mass. Gen. Laws ch. 140, § 129C. Gonzalez would be forced to undertake the extraordinarily burdensome task of investigating whether any of these exemptions applied to the joint venturer who possessed the gun.

### III. Conclusion

In the circumstances of this case, petitioner was denied due process of law when he was convicted of possession of ammunition without a firearm identification card.

Judgment may be entered granting the writ with respect to the conviction under Count 5 of the indictment.

| November 30, 2010 | /s/Rya W. Zobel |
|---|---|
| DATE | RYA W. ZOBEL |
| | UNITED STATES DISTRICT JUDGE |